**POULIN | WILLEY | ANASTOPOULO, LLC**
Eric M. Poulin (California State Bar No. 298476)
    *eric.poulin@poulinwilley.com*
Blake G. Abbott (*Pro Hac Vice* Forthcoming)
    *blake.abbott@poulinwilley.com*
Paul J. Doolittle (*Pro Hac Vice* Forthcoming)
    *paul.doolittle@poulinwilley.com*
32 Ann Street
Charleston, SC 29403
Telephone: (803) 222-2222
Fax: (843) 494-5536

*Additional Attorney listed on Signature Page*

*Attorneys for Plaintiff Callie Adams*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALLIE ADAMS, individually and on behalf of all others similarly situated, | |
| Plaintiff, | **Civil Action No.** |
| vs. | **CLASS ACTION COMPLAINT** |
| POSTMEDS, INC. d/b/a TRUEPILL, | **JURY TRIAL DEMANDED** |
| Defendant. | |

Plaintiff, Callie Adams ("Plaintiff"), individually and on behalf of all others similarly situated, respectfully submits the following Class Action Complaint against Defendant Postmeds, Inc. d/b/a Truepill ("Postmeds" or

CLASS ACTION COMPLAINT            1

"Defendant"). Plaintiff makes the following allegations, except as to allegations specifically pertaining to Plaintiff, upon information and belief based on, among other things, the investigation of counsel and review of public documents.

## **PRELIMINARY STATEMENT**

1.      Plaintiff brings this class action against Defendant for its failure to properly secure and safeguard the personally identifiable information ("PII") and protected health information ("PHI") of Defendant's current and former patients including but not limited to: prescription information including medication type, demographic information, and/or prescribing physician.

2.      Postmeds is a California based corporation with its headquarters located in Hayward, California.

3.      Defendant is a digital pharmacy company that fulfills prescriptions and dispenses medication to more than 3 million patients nationwide.

4.      Given its business model as a healthcare service provider, Postmeds had an obligation to safeguard Plaintiff's PII and PHI, but did not.

5.      On August 31, 2023, unusual activity was detected on some of Defendant's computer systems. In response, Defendant launched an investigation that revealed an unauthorized party had access to certain files that contained sensitive patient information, and that such access took place between August 30, 2023, and September 1, 2023 (the "Data Breach").[1]

6.      On or about October 30, 2023, Postmeds filed official notice of a hacking incident with the Department of Health and Human Services.[2]

_____

[1] *See* https://ocrportal.hhs.gov/ocr/breach/breach_report.jsf (last visited Nov. 29, 2023).
[2] *See Id.*

7.    As required by section 13402(e)(4) of the HITECH Act, the Secretary must post a list of breaches of unsecured protected health information affecting 500 or more individuals.

8.    Further, on or about October 30, 2023, Postmeds also sent out data breach letters to individuals whose information was compromised as a result of the hacking incident.[3]

9.    Plaintiff and Members of the Proposed Class were, and continue to be for potentially an indefinite period of time, at significant risk of identity theft and various other forms of personal, social, and financial harm.

10.    As ForgeRock's 2023 Identity Breach Report stated, stolen identity data can lead to long-term problems – breached records that include Social Security Numbers and protected health information (PHI) are on the rise, and can be used for ongoing fraud.[4]

11.    ForgeRock also points out that while some sectors have successfully reduced breaches, attacks on healthcare and education have been large – and expensive.[5]

12.    Postmeds knew or should have known of the increasing number of well-publicized data breaches that have occurred in the United States, particularly in the healthcare sectors. And yet, Defendant failed to adequately secure and upgrade its systems and failed to provide notice to affected individuals until almost a month after the first breach.

---

[3] *See* Exhibit A- Defendant's Data Breach Notification Letter
[4] *See* https://www.forgerock.com/resources/analyst-report/2023-forgerock-identity-breach-report?utm_source=adwords&utm_medium=search-paid&adgroupid=151501746900&utm_term=data%20breach%20report&gad_source=1&gclid=Cj0KCQiAmNeqBhD4ARIsADsYfTeQaY1mrXMjbc82b_T8EfrJmBpNvJ-r5avpV8x5scHJtN3LZ__nhNMaAv7eEALw_wcB (last visited Nov. 29, 2023).
[5] *See Id.*

1      13.    Plaintiff and Class Members entrusted Postmeds with their sensitive

2   and valuable PII and PHI. Plaintiff and Class Members did not know that

3   Postmeds' data security was inadequate.

4      14.    Postmeds has caused harm to Plaintiff and Class Members by

5   collecting, using, and maintaining their PII for its own economic benefit but

6   failing to protect that information: Defendant did not maintain adequate security

7   systems, did not properly archive patients PII and PHI, allowed access by third

8   parties, and did not implement sufficient security measures.

9      15.    Plaintiff brings this action on behalf of all patients of Postmeds

10   whose PII and PHI was compromised as a result of Postmeds' failure to:

11        a.   Adequately protect its customers' PII;

12        b.   Warn customers of its inadequate information security practices; and

13        c.   Effectively secure hardware, data, and information systems through

14           reasonable and effective security procedures.

15      16.    The Data Breach was the result of a sophisticated, intentional, and

16   malicious attack by professional cybercriminal hackers and was not the result of

17   an accidental disclosure by a Postmeds employee. Thus, there is an increased and

18   substantial risk that the victims will experience identity theft or fraud that is

19   sufficiently imminent.

20      17.    Plaintiff and Class Members have suffered injury as a direct and

21   proximate result of Defendant's conduct.

22      18.    These above-mentioned injuries to Plaintiff and the Class Members

23   include:

24        a.   Lost or diminished value of PII and PHI, a form of property that

25           Postmeds obtained from Plaintiff and Class Members;

26        b.   Out-of-pocket expenses associated with preventing, detecting, and

27           remediating identity theft and other unauthorized uses of their PII

28

CLASS ACTION COMPLAINT     4

and PHI;

c.  Opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to lost time;

d.  The continued and certain increased risk that unauthorized persons will access and abuse Plaintiff's and Class Members' unencrypted PII and PHI that is available on the dark web;

e.  The continued and certain increased risk that the PII and PHI that remains in Postmeds' possession is subject to further unauthorized disclosure for so long as Postmeds fails to undertake appropriate and adequate measures to protect the PII and PHI;

f.  Invasion of privacy; and

g.  Theft of their PII and PHI and the resulting loss of privacy rights in that information.

19.    As a direct and proximate result of Defendant's breach of confidence and failure to protect the PII and PHI of its patients, Plaintiff and Class Members have been injured by facing ongoing, imminent, impending threats of identity theft crimes, fraud, scams, and other misuses of their PII and PHI; ongoing monetary loss and economic harm; loss of value of privacy and confidentiality of the stolen PII and PHI; illegal sales of the compromised PII and PHI; mitigation expenses and time spent on credit monitoring; identity theft insurance costs; credit freezes/unfreezes; expense and time spent on initiating fraud alerts and contacting third parties; decreased credit scores; lost work time; and other injuries. Plaintiff and Class Members have a continuing interest in ensuring that their information is and remains safe, and they should be entitled to injunctive and other equitable relief.

## JURISDICTION AND VENUE

20.     This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, the relevant portion of which is codified at 28 U.S.C. §1332(d). The aggregated claims of the individual Class members exceed the sum or value of $5,000,000, exclusive of interests and costs, and this is a class action in which more than two-thirds of the proposed plaintiff class, on the one hand, and Defendant, on the other, are citizens of different states.

21.     This Court has personal jurisdiction over Defendant Postmeds because Defendant Postmeds' headquarters and principal place of business are located within this district.

22.     Venue is proper in this District under 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District. The Defendant sells and distributes medications throughout the United States and within this District.

## **PARTIES**

23.     Callie Adams is a citizen of the State of South Carolina and resides in Greenville, South Carolina. Greenville is located within Greenville County, South Carolina.

24.     Plaintiff was a user of Defendant's services and received a letter from Defendant confirming that her data was breached.

25.     Plaintiff suffered actual injury from having her PII and PHI compromised as a result of the Data Breach including, but not limited to (a) damage to and diminution in the value of Plaintiff's PII and PHI, a form of property that Postmeds obtained from Plaintiff; (b) violation of Plaintiff's privacy rights; and (c) present and increased risk arising from potential identity theft and fraud.

26.     As a result of the Data Breach, Plaintiff anticipates spending considerable time and money on an ongoing basis to try to mitigate and address

1  the harms caused by the Data Breach. As a result of the Data Breach, Plaintiff is
2  and will continue to be at increased risk of identity theft and fraud for years to
3  come.

4        27.    Defendant Postmeds is a digital pharmacy company incorporated in
5  Delaware with its principal place of business at 3121 Diablo Avenue, Hayward,
6  California, 94545 in Alameda County.

7                          **FACTUAL ALLEGATIONS**

8  **A. Postmeds' Collection of Plaintiff's and Class Members' PII and PHI**

9        28.    Postmeds d/b/a TRUEPILL is a digital healthcare company
10  specializing in pharmacy delivery services. Founded in 2015, Postmeds operates a
11  network of mail order and specialty pharmacies, serving more than 3 million
12  patients by shipping prescriptions to all fifty (50) states. Postmeds employs more
13  than 300 people and generates approximately $101 million in annual revenue.

14       29.    As part of standard business operations, Defendant collected the PII
15  and PHI of Plaintiff and Class Members for business purposes. As such,
16  Defendant had a duty to adopt reasonable measures to protect the PII and PHI of
17  Plaintiff and Class Members from involuntary disclosure to third parties.

18       30.    Postmeds informs its patients through its Privacy Policy that it is
19  "required by law to maintain the privacy and security of your protected health
20  information" and promises that it "will not use or share your information other
21  than as described here unless you tell us we can in writing" and it will let you
22  know promptly if a breach occurs that may have compromised the privacy or
23  security of your information."[6]

24       31.    In addition, in its Privacy Policy, Postmeds promises its patients that
25  it "respects your privacy and [is] committed to protecting it."[7]

26  _____

27  [6] *See* https://www.truepill.com/legal/nopp (Last visited 11/29/23)
28  [7] *See* https://www.truepill.com/legal/privacy (Last visited 11/16/23)

CLASS ACTION COMPLAINT          7

32.    Given the highly sensitive nature of the PII and PHI information involved, Plaintiff and Class Members relied on these statements, along with Defendant's sophistication, to keep their PII and PHI confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information. Plaintiff and Class Members demand security to safeguard their PII and PHI.

33.    Further, by obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class Members' PII and PHI, Postmeds assumed duties it owed to them and knew or should have known that it was responsible for protecting Plaintiff's and Class Members' sensitive PII and PHI from unauthorized disclosure to third parties and other bad actors.

**B. The Data Breach and Late Notice to Plaintiff and Class Members**

34.    According to Defendant's Notice, it learned of unauthorized access to its computer systems on August 31, 2023, with such unauthorized access having taken place between August 30, 2023, and September 1, 2023.

35.    Cybercriminals were able to access sensitive PII and PHI including names of patients, prescription information and type of pharmaceuticals, prescribing doctors' information, and demographic information about the patients.

36.    It was not until roughly two months after Postmeds learned of this breach that it finally took steps to notify patients that their confidential PHI and PII were accessed.

37.    Postmeds had obligations created by contract, industry standards, common law, and representations made to Plaintiffs and Class Members to keep Plaintiff's and Class Members' PII and PHI confidential and to protect it from unauthorized access and disclosure.

38.    Plaintiff and Class Members provided their Private Information as part of standard business transactions to Postmeds with the reasonable expectation that Postmeds would work to keep such PII and PHI confidential and secure from unauthorized access and to provide timely notice of any security breaches.

39.    Given the sharp rise in recent years of serious cyber attacks, particularly in the healthcare sector, Postmeds knew or should have known that its electronic records could be targeted by cybercriminals.

**C. The Healthcare Sector and Ransomware Attacks**

40.    Postmeds was on actual and constructive notice that companies in the healthcare industry are susceptible targets for data breaches.

41.    A cohort study published in *The Journal of the American Medical Association* in December 2022 examined ransomware attacks against healthcare delivery organizations from 2016 to 2021, and revealed that Ransomware attacks targeting healthcare delivery organizations doubled in that time period.[8]

42.    As stated by the CISA; "Given the increasingly sophisticated and widespread nature of cyber-attacks, the healthcare industry must make cybersecurity a priority and make the appropriate investments needed to protect its patients" and "For the health industry, it is fundamentally about patient safety and uninterrupted care delivery. **Cyber Safety is Patient Safety!**"[9]

43.    Given the incredibly sensitive nature of healthcare data, breaches in this information are among the most personally consequential. A report focusing on healthcare breaches found that the "average total cost to resolve an identity theft-related incident . . . came to about $20,000," and that the victims were often

---

[8] *See* https://www.hhs.gov/sites/default/files/2022-retrospective-and-2023-look-ahead.pdf (Last visited 11/29/23)

[9] *See* https://www.cisa.gov/stopransomware/healthcare-and-public-health-sector (Last visited 11/29/23)

forced to pay out-of-pocket costs for healthcare they did not receive in order to restore coverage.[10]

44.     The unencrypted PII and PHI of Plaintiff and Class Members has a real risk, or may have already ended up, for sale on the dark web, or simply fall into the hands of companies that will use the detailed PII and PHI for targeted marketing without the approval of Plaintiff and Class Members. Unauthorized individuals can easily access the PII and PHI of Plaintiff and Class Members once it is on the dark web.

45.     Defendant did not use reasonable security procedures and practices appropriate to the nature of the sensitive, unencrypted information it was maintaining for Plaintiff and Class Members, causing the exposure of PII and PHI for Plaintiff and Class Members.

46.     Because Defendant had a duty to protect Plaintiff's and Class Members' PII and PHI, Defendant should have accessed readily available and accessible information about potential threats for the unauthorized exfiltration and misuse of such information.

47.     Plaintiff and Class Members relied on the sophistication and security of Defendant and its network to keep their PII and PHI confidential and securely maintained, to use this information for commercial purposes only, and to make only authorized disclosures of this information. Plaintiff and Class Members had the understanding that this highly sensitive PII and PHI was confidential and would be properly safeguarded from misuse and theft.

48.     Postmeds is well aware of its legal privacy obligations, the risks of cyber threats, and that it had obligations created by statute, contract, industry

---

[10] Elinor Mills, *Study: Medical identity theft is costly for victims*, CNET (March 3, 2010), available at: https://www.cnet.com/news/privacy/study-medical-identity-theft-is-costly-for-victims/ (last visited 11/29/23).

standards, and common law to keep Plaintiff's PII and PHI confidential and to protect it from unauthorized access and disclosure.

49.    Plaintiff relied on the promises and duties of Postmeds to keep her sensitive PII and PHI confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information.

50.    Despite the prevalence of public announcements of data breach and data security compromises, and despite its own present and prior acknowledgments of data security compromises, and despite its own acknowledgment of its duties to keep PII and PHI private and secure, Postmeds failed to take appropriate steps to prevent the PII and PHI of Plaintiff and the Putative Class from being compromised.

51.    Defendant had the resources necessary to prevent the Data Breach but neglected to adequately invest in security measures, despite its obligation to protect such information. Accordingly, Defendant breached its common law, statutory, and other duties owed to Plaintiff and Class Members.

52.    Security standards commonly accepted among healthcare sectors that store PII and PHI using the internet include, without limitation:

    a.  Maintaining a secure firewall configuration;

    b.  Maintaining appropriate design, systems, and controls to limit user access to certain information as necessary;

    c.  Monitoring for suspicious or irregular traffic to servers;

    d.  Monitoring for suspicious credentials used to access servers;

    e.  Monitoring for suspicious or irregular activity by known users;

    f.  Monitoring for suspicious or unknown users;

    g.  Monitoring for suspicious or irregular server requests;

    h.  Monitoring for server requests for PII;

i.   Monitoring for server requests from VPNs; and

j.   Monitoring for server requests from Tor exit nodes.

k.   Failing to ensure the confidentiality and integrity of electronic protected health information Postmeds creates, receives, maintains, and transmits in violation of 45 CFR 164.306(a)(1);

l.   Failing to implement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights in violation of 45 CFR 164.312(a)(1);

m.  Failing to implement policies and procedures to prevent, detect, contain, and correct security violations in violation of 45 CFR 164.308(a)(1);

53.   Because Postmeds has failed to comply with HIPAA, while monetary relief may cure some of Plaintiff's and Class Members' injuries, injunctive relief is also necessary to ensure Postmeds' approach to information security is adequate and appropriate going forward. Postmeds still maintains the PHI and other highly sensitive PII of its current and former patients, including Plaintiff's and Class Members. Without the supervision of the Court through injunctive relief, Plaintiff's and Class Members' Private Information remains at risk of subsequent data breaches.

**D. Postmeds Failed to Comply with FTC Guidelines**

54.   Federal and State governments have established security standards and issued recommendations to mitigate the risk of data breaches and the resulting harm to consumers and financial institutions. The Federal Trade Commission ("FTC") has issued numerous guides for business highlighting the

1    importance of reasonable data security practices. According to the FTC, the need

2    for data security should be factored into all business decision-making.[11]

3        55.     In 2016, the FTC updated its publication, *Protecting Personal*

4    *Information: A Guide for Business*, which established guidelines for fundamental

5    data security principles and practices for business.   The guidelines note

6    businesses should protect the personal consumer and consumer information that

7    they keep, as well as properly dispose of personal information that is no longer

8    needed; encrypt information stored on computer networks; understand their

9    network's vulnerabilities; and implement policies to correct security problems.

10       56.     The FTC recommends that businesses[12]:

11           a.  Identify all connections to the computers where you store sensitive
12               information.

13           b.  Assess the vulnerability of each connection to commonly known or
14               reasonably foreseeable attacks.

15           c.  Do not store sensitive consumer data on any computer with an
16               internet connection unless it is essential for conducting their
17               business.

18           d.  Scan computers on their network to identify and profile the
19               operating system and open network services. If services are not
20               needed, they should be disabled to prevent hacks or other potential
21               security problems. For example, if email service or an internet
22               connection is not necessary on a certain computer, a business
23               should consider closing the ports to those services on that
24               computer to  prevent unauthorized access to that machine.

---

26   [11] Federal Trade Commission, *Start With Security,* available at:
27   https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf (last visited 11/29/23).
     [12] *Id.*

CLASS ACTION COMPLAINT          13

e.  Pay particular attention to the security of their web applications—
the software used to give information to visitors to their websites
and to retrieve information from them. Web applications may be
particularly vulnerable to a variety of hacker attacks.

f.  Use a firewall to protect their computers from hacker attacks while
it is connected to a network, especially the internet.

g.  Determine whether a border firewall should be installed where the
business's network connects to the internet. A border firewall
separates the network from the internet and may prevent an
attacker from gaining access to a computer on the network where
sensitive information is stored. Set access controls— settings that
determine which devices and traffic get through the firewall—to
allow only trusted devices with a legitimate business need to
access the network. Since the protection a firewall provides is only
as effective as its access controls, they should be reviewed
periodically.

h.  Monitor incoming traffic for signs that someone is trying to hack
in. Keep an eye out for activity from new users, multiple log-in
attempts from unknown users or computers, and higher-than-
average traffic at unusual times of the day.

i.  Monitor outgoing traffic for signs of a data breach. Watch for
unexpectedly large amounts of data being transmitted from their
system to an unknown user. If large amounts of information are
being transmitted from a business' network, the transmission
should be investigated to make sure it is authorized.

57.  The FTC has brought enforcement actions against businesses for
failing to protect consumer and consumer data adequately and reasonably,

treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

58.   Because Plaintiff entrusted Defendant with her PII and PHI, Defendant had, and still has, a duty to the Plaintiff to keep her PII and PHI secure.

59.   Plaintiff reasonably expected that when she provided PII and PHI to Postmeds, Postmeds would safeguard her PII and PHI.

60.   Postmeds was at all times fully aware of its obligation to protect the personal and financial data, including Plaintiff's. Postmeds was also aware of the significant repercussions if it failed to do so.

61.   Postmeds' failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential data—including Plaintiffs' first, middle, and last name, addresses, Social Security number, and other highly sensitive and confidential information—constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

**E. Concrete Injuries are Caused by Postmeds' Inadequate Security.**

62.   Plaintiff reasonably expected that Postmeds would provide adequate security protections for her PII and PHI, and Plaintiff provided Defendant with sensitive personal information, including her name, address, and prescription information.

63.   Defendant's poor data security deprived Plaintiff and Class Members of the benefit of their bargain. Plaintiff and other individuals whose PII and PHI was entrusted with Defendant understood and expected that, as part of that relationship, they would receive data security, when in fact Defendant did not provide the expected data security. Accordingly, Plaintiff and Class Members

received data security services that were of a lesser value than what they reasonably expected. As such, Plaintiff and Class Members suffered pecuniary injury.

64.     Cybercriminals intentionally attack and exfiltrate PII and PHI to exploit it. Thus, Plaintiff is now, and for the rest of her life will be, at a heightened and substantial risk of identity theft. Plaintiff and Class Members have also incurred (and will continue to incur) damages in the form of, *inter alia*, loss of privacy and costs of engaging adequate credit monitoring and identity theft protection services.

65.     The cybercriminals who obtained Plaintiff and Class Members' PII may exploit the information they obtained by selling the data in so-called "dark markets" or on the "dark web." Having obtained these names, addresses, Social Security numbers, and other PII, cybercriminals can pair the data with other available information to commit a broad range of fraud in Plaintiff's name.

66.     Accordingly, as a direct and/or proximate result of Postmeds' wrongful actions and/or inaction and the resulting Data Breach, Plaintiff and Class Members have been placed at an imminent, immediate, and continuing increased risk of identity theft and identity fraud. Indeed, "[t]he level of risk is growing for anyone whose information is stolen in a data breach."[13] Moreover, there is a high likelihood that significant identity fraud and/or identity theft has not yet been discovered or reported. Even data that has not yet been exploited by cybercriminals bears a high risk that the cybercriminals who now possess Plaintiff's PII will exploit the data at a later date or re-sell it to other possible exploiters.

---

[13] Susan Ladika, *Study: Data Breaches Pose A Greater Risk* (July 23, 2014), https://www.foxbusiness.com/features/study-data-breaches-pose-a-greater-risk (last visited 11/29/23).

CLASS ACTION COMPLAINT          16

67.     As a result of the Data Breach, Plaintiff has already suffered injuries, and now faces a substantial and imminent risk of future identity theft.

**F. Data Breaches Put Consumers at an Increased Risk of Fraud and Identify Theft.**

68.     Data Breaches, such as the one Plaintiff and Class Members experienced, are especially problematic because of the disruption they cause to the overall daily lives of victims affected by the attack.

69.     The FTC, like the United States Government Accountability Office, recommends that identity theft victims take several steps to protect their personal and financial information after a data breach, including contacting one of the credit bureaus to place a fraud alert (consider an extended fraud alert that lasts for 7 years if someone steals their identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a credit freeze on their credit, and correcting their credit reports.[14]

70.     Theft of PII is also gravely serious as PII is a valuable property right.[15]

71.     It must also be noted there may be a substantial time lag – measured in years -- between when harm occurs versus when it is discovered, and also between when PII and/or financial information is stolen and when it is used. According to the U.S. Government Accountability Office, which has conducted studies regarding data breaches: "[L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result,

---

[14] *See* https://www.identitytheft.gov/Steps (last accessed 11/29/23).
[15] *See, e.g.,* John T. Soma, et al, Corporate Privacy Trend: The "Value" of Personally Identifiable Information ("PII") Equals the "Value" of Financial Assets, 15 Rich. J.L. & Tech. 11, at *3-4 (2009) ("PII, which companies obtain at little cost, has quantifiable value that is rapidly reaching a level comparable to the value of traditional financial assets.") (citations omitted).

1    studies that attempt to measure the harm resulting from data breaches cannot
2    necessarily rule out all future harm."[16]

3        72.    PII and PHI are such valuable commodities to identity thieves that
4    once the information has been compromised, criminals often trade the
5    information on the "cyber black-market" for years. Accordingly, because of
6    Postmeds' conduct, Plaintiff and Class Members must now worry about identity
7    theft for years on end.

8                    **CLASS ACTION ALLEGATIONS**

9        73.    Plaintiff brings this action on behalf of herself and as a class action,
10   pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and/or 23(b)(3). Specifically, the class
11   and subclass are defined as follows:

12       a) **Nationwide Class:** All individuals in the United States who had
13          Private Information accessed and/or acquired as a result of the
14          Data Breach, including all who were sent a notice of the Data
15          Breach.

16       74.    Plaintiff reserves the right to amend the Class definition if further
17   investigation and discovery indicate that the Class definition should be narrowed,
18   expanded, or otherwise modified.

19       75.    Excluded from the Class are governmental entities, Defendant, its
20   officers, directors, franchise owners, and any entity Defendant retains a
21   controlling interest in; and the affiliates, legal representatives, and employees of
22   Defendant.

23       76.    This action has been brought and may be maintained as a class action
24   under Federal Rule of Civil Procedure Rule 23.

25
26   _____
27   [16] *See* "Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the
     Full Extent Is Unknown," p. 2, U.S. Government Accountability Office, June 2007,
28   https://www.gao.gov/new.items/d07737.pdf (last accessed 11/29/23).

77. **Numerosity** – Federal Rule of Civil Procedure 23(a)(1). This Class numbers at least in the thousands of persons. As a result, joinder of all Class Members in a single action is impracticable. Class Members may be informed of the pendency of this class action through a variety of means, including, but not limited to, direct mail, email, published notice, and website posting.

78. **Existence and Predominance of Common Questions of Law and Fact** – Federal Rules of Civil Procedure 23(a)(2) and 23(b)(3). There are questions of fact and law common to the Class that predominate over any question affecting only individual Members. Those questions, each of which may also be certified under Rule 23(c)(4), include without limitation:

    a.  Whether Defendant unlawfully used, maintained, lost, or disclosed Plaintiff's PII and PHI;

    b.  Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

    c.  Whether Defendant's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

    d.  Whether Defendant's data security systems prior to and during the Data Breach were consistent with industry standards;

    e.  Whether Defendant owed a duty to Plaintiff to safeguard her PII and PHI;

    f.  Whether Defendant breached its duty to Plaintiff to safeguard her PII and PHI;

    g.  Whether computer hackers obtained Plaintiff's PII and PHI in the Data Breach;

    h.  Whether Defendant knew or should have known that its data

security systems and monitoring processes were deficient;

i.   Whether Plaintiff suffered legally cognizable damages as a result of Defendant's misconduct;

j.   Whether Defendant's conduct was negligent;

k.   Whether Defendant failed to provide notice of the Data Breach in a timely manner; and

l.   Whether Plaintiff is entitled to damages, civil penalties, punitive damages, and/or injunctive relief.

79.   **Typicality** – Federal Rule of Civil Procedure 23(a)(3). Plaintiff's claims are typical of those of the Class because Plaintiff's PII and PHI, like that of every other Class member, was compromised in the Data Breach.

80.   **Superiority** – Federal Rule of Civil Procedure 23(b)(3). A class action is the appropriate method for the fair and efficient adjudication of this controversy. The presentation of separate actions by individual Class Members could create a risk of inconsistent adjudications, establish incompatible standards of conduct for Defendant, and/or substantially impair or impede the ability of Class Members to protect their interests. In addition, it would be impracticable and undesirable for each member of the Class who suffered an economic loss to bring a separate action. The maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all Class Members.

81.   **Adequacy** – Federal Rule of Civil Procedure 23(a)(4). Plaintiff is an adequate representative of the Class because she is a member of the Classes and her interests do not conflict with the interests of the Classes that she seeks to represent. The interests of the Members of the Class will be fairly and adequately protected by Plaintiff and her undersigned counsel.

82. **Insufficiency of Separate Actions** – Federal Rule of Civil Procedure 23(b)(1). Absent a representative class action, Members of the Class would continue to suffer the harm described herein, for which they would have no remedy. Even if separate actions could be brought by individual consumers, the resulting multiplicity of lawsuits would cause undue burden and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated Class members, substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for Defendant. The proposed Class thus satisfy the requirements of Fed. R. Civ. P. 23(b)(1).

83. **Declaratory and Injunctive Relief** – Federal Rule of Civil Procedure 23(b)(2). Defendant has acted or refused to act on grounds generally applicable to Plaintiff and the other Members of the Class, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Members of the Class as a whole.

84. Additionally, the Class may be certified under Rule 23(b)(1) and/or (b)(2) because:

a. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class that would establish incompatible standards of conduct for the Defendant;

b. The prosecution of separate actions by individual members of the Class would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other members of the Class not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

c.  Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final and injunctive relief with respect to the members of the Class as a whole.

## CAUSES OF ACTION

## COUNT I

## NEGLIGENCE

## (ON BEHALF OF PLAINTIFF AND NATIONWIDE CLASS)

85.  Plaintiff realleges and incorporates by reference the paragraphs above as if fully set forth herein.

86.  As part of the regular course of its business operations Defendant gathered and stored the PII and PHI of Plaintiff and Class Members.

87.  Plaintiff and the Class were entirely dependent on Defendant to use reasonable measures to safeguard their PII and PHI and were vulnerable to the foreseeable harm of a security breach should Defendant fail to safeguard their PII and PHI.

88.  By collecting and storing this data in its computer property, and sharing it, and using it for commercial gain, Defendant assumed a duty of care to use reasonable means to secure and safeguard their computer property—and Class Members' PII and PHI held within it— to prevent disclosure of the information, and to safeguard the information from theft. Defendant's duty included a responsibility to implement processes by which it could detect a breach of their security systems in a reasonably expeditious period of time and to give prompt notice to those affected in the case of a Data Breach.

89.  Defendant owed a duty of care to Plaintiff and the Class to provide data security consistent with industry standards and other requirements discussed

herein, and to ensure that its systems and networks, and the personnel responsible for them, adequately protected the PII and PHI.

90.    Defendant's duty also arose under Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect PII and PHI by companies such as Postmeds. Various FTC publications and data security breach orders further form the basis of Defendant's duty. In addition, individual states have enacted statutes based upon the FTC Act that also created a duty.

91.    Plaintiff and the Class are within the class of persons that the FTC Act was intended to protect.

92.    The harm that occurred as a result of the Data Breach is the type of harm the FTC Act was intended to guard against. The FTC has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and the Class.

93.    Defendant gathered and stored the PII of Plaintiff and the Class as part of its business of soliciting its services to its clients and its clients' patients, which solicitations and services affect commerce.

94.    Defendant violated the FTC Act by failing to use reasonable measures to protect the PII of Plaintiff and Class Members and by not complying with applicable industry standards.

95.    Defendant breached its duties to Plaintiff and the Class under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and/or data security practices to safeguard their PII and PHI, and by failing to provide prompt notice without reasonable delay.

96.     Defendant's duty of care to use reasonable security measures arose as a result of the special relationship that existed between Defendant and those who sought to use its services, which is recognized by laws and regulations including but not limited to FTCA, as well as common law. Defendant was in a position to ensure that its systems were sufficient to protect against the foreseeable risk of harm to Plaintiff and the Class or minimize the Data Breach.

97.     Defendant's multiple failures to comply with applicable laws and regulations, and the violation of Section of 5 of the FTC Act constitutes negligence per se.

98.     Defendant's duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations described above, but also because Defendant is bound by industry standards to protect confidential PII and PHI.

99.     Defendant had full knowledge of the sensitivity of the PII and PHI, the types of harm that Plaintiff could and would suffer if the PII and PHI was wrongfully disclosed, and the importance of adequate security.

100.     Plaintiff and the Class Members were the foreseeable victims of any inadequate safety and security practices. Plaintiff and the Class had no ability to protect their PII and PHI that was in Defendant's possession.

101.     Defendant was in a special relationship with Plaintiff and the Class with respect to the hacked PII and PHI because the aim of Defendant's data security measures was to benefit Plaintiff by ensuring that their PII and PHI would remain protected and secure. Only Defendant was able to ensure that its systems were sufficiently secure to protect Plaintiff's and other Class Members' PII and PHI. The harm to Plaintiff and the Class from its exposure was highly foreseeable to Defendant.

102.   Defendant owed Plaintiff and other Class Members a common law duty to use reasonable care to avoid causing foreseeable risk of harm to Plaintiff and the Class when obtaining, storing, using, and managing their PII and PHI, including acting to reasonably safeguard such data and providing notification to Plaintiff and the Class of any breach in a timely manner so that appropriate action could be taken to minimize losses.

103.   Defendant had duties to protect and safeguard the PII and PHI of Plaintiff and other Class Members from being vulnerable to compromise by taking common-sense precautions when dealing with highly sensitive PII and PHI. Additional duties that Defendant owed Plaintiff and the Class include:

a.  Exercising reasonable care in designing, implementing, maintaining, monitoring, and testing Defendant's networks, systems, protocols, policies, procedures and practices to ensure that individuals PII and PHI was adequately secured from impermissible release, disclosure, and publication;

b.  To protect Plaintiff's and the Class's PII and PHI in its possession by using reasonable and adequate security procedures and systems; and

c.  To promptly notify Plaintiff and the Class of any breach, security incident, unauthorized disclosure, or intrusion that affected or may have affected their PII and PHI.

104.   Only Defendant was in a position to ensure that its systems and protocols were sufficient to protect the PII and PHI that had been entrusted to them.

105.   Defendant breached its duties of care by failing to adequately protect Plaintiff and the Class's PII. Defendant breached its duties by:

a.  Failing to exercise reasonable care in obtaining, retaining,

securing, safeguarding, protecting, and deleting the PII and PHI in its possession;

b. Failing to protect the PII and PHI in its possession using reasonable and adequate security procedures and systems;

c. Failing to adequately and properly audit, test, and train its employees regarding how to properly and securely transmit and store PII and PHI;

d. Failing to adequately train its employees to not store unencrypted PII and PHI in their personal files longer than absolutely necessary for the specific purpose that it was sent or received;

e. Failing to consistently enforce security policies aimed at protecting Plaintiff's and the Class's PII and PHI;

f. Failing to mitigate the harm caused to Plaintiff and the Class;

g. Failing to implement processes to quickly detect data breaches, security incidents, or intrusions; and

h. Failing to promptly notify Plaintiff and other Class Members of the Data Breach that affected their PII and PHI.

106. Defendant's willful failure to abide by these duties was wrongful, reckless, and grossly negligent in light of the foreseeable risks and known threats.

107. Postmeds, through its actions and/or omissions, unlawfully breached its duties to Plaintiff and the Class by failing to implement industry protocols and exercise reasonable care in protecting and safeguarding the PII and PHI of Plaintiff and the Class during the time the PII and PHI was within Defendant's possession or control.

108. Defendant's failure to provide timely and clear notification of the Data Breach to Plaintiff and the Class prevented Plaintiff and the Class from

1   taking meaningful, proactive steps to securing their PII and PHI and mitigating
2   damages.

3   109.   Defendant's wrongful actions, inaction, and omissions constituted
4   (and continue to constitute) common law negligence.

5   110.   As a direct and proximate result of Defendant's negligence and
6   negligence *per se*, Plaintiff and the Class have suffered and will suffer injury,
7   including but not limited to: (i) actual identity theft; (ii) the loss of the
8   opportunity of how their PII and PHI is used; (iii) the compromise, publication,
9   and/or theft of their PII and PHI; (iv) out-of-pocket expenses associated with the
10  prevention, detection, and recovery from identity theft, tax fraud, and/or
11  unauthorized use of their PII and PHI; (v) lost opportunity costs associated with
12  effort expended and the loss of productivity addressing and attempting to mitigate
13  the actual and future consequences of the Data Breach, including but not limited
14  to efforts spent researching how to prevent, detect, contest, and recover from tax
15  fraud and identity theft; (vi) costs associated with placing freezes on credit
16  reports; (vii) the continued risk to their PII and PHI, which remain in Defendant's
17  possession and is subject to further unauthorized disclosures so long as Defendant
18  fails to undertake appropriate and adequate measures to protect the PII and PHI in
19  their continued possession; and (viii) future costs in terms of time, effort, and
20  money that will be expended to monitor bank accounts and credit reports,
21  prevent, detect, contest, and repair the impact of the PII and PHI compromised as
22  a result of the Data Breach for the remainder of the lives of Plaintiff and members
23  of the Class.

24  111.   As a direct and proximate result of Defendant's negligence, Plaintiff,
25  and members of the Class have suffered (and will continue to suffer) other forms
26  of injury and/or harm, including, but not limited to, anxiety, emotional distress,
27  loss of privacy, and other economic and non- economic losses.

28

112.   Additionally, as a direct and proximate result of Defendant's negligence and negligence per se, Plaintiff and members of the Class have suffered and will suffer the continued risks of exposure of their PII and PHI, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII and PHI in its continued possession.

113.   Plaintiff and members of the Class have suffered injury and are entitled to actual damages in amounts to be proven at trial.

## COUNT II
### BREACH OF IMPLIED CONTRACT
### (ON BEHALF OF PLAINTIFF AND THE NATIONWIDE CLASS)

114.   Plaintiff re-alleges and incorporates by reference the paragraphs above as if fully set forth herein.

115.   Plaintiff and Class Members were required to provide their PII and PHI to Defendant as a condition of receiving services provided by Defendant.

116.   Plaintiff and Class Members provided PII and PHI to Defendant (or its third-party agents) in exchange for services. In exchange, Defendant promised to protect their PII and PHI from unauthorized disclosure.

117.   At all relevant times Defendant promulgated, adopted, and implemented written a Privacy Policy whereby it expressly promised Plaintiff and Class Members that it would only disclose PII and PHI under certain circumstances, none of which relate to the Data Breach.

118.   On information and belief, Defendant further promised to comply with industry standards and to make sure that Plaintiff's and Class Members' PII and PHI would remain protected.

119.   Implicit in the agreement between Plaintiff, Class Members and the Defendant to provide PII and PHI, was the latter's obligation to: (a) use such PII

CLASS ACTION COMPLAINT         28

and PHI for business purposes only, (b) take reasonable steps to safeguard that PII and PHI, (c) prevent unauthorized disclosures of the PII and PHI, (d) provide Plaintiff and Class Members with prompt and sufficient notice of any and all unauthorized access and/or theft of their PII and PHI, (e) reasonably safeguard and protect the PII and PHI of Plaintiff and Class Members from unauthorized disclosure or uses, (f) retain the PII and PHI only under conditions that kept such information secure and confidential.

120.   Defendant required Plaintiff and Class Members to provide their PII and PHI as part of regular business practices.

121.   When Plaintiff and Class Members provided their PII and PHI to Defendant as a condition of the consumer relationship, implied contracts were created with Defendant. As such, Defendant agreed to reasonably protect such information.

122.   Plaintiff and Class Members entered into the implied contracts with the reasonable expectation and belief that Defendant's data security practices complied with relevant laws and regulations and were consistent with industry standards.

123.   Plaintiff and Class Members believed that Postmeds would use part of the monies paid to Defendant under the implied contracts or the monies obtained from the benefits derived from the PII and PHI they provided to fund adequate and reasonable data security practices.

124.   Plaintiff and the Class would not have entrusted their PII and PHI to Defendant in the absence of the implied contract between them and Defendant to keep their information reasonably secure. Plaintiffs and Class Members would not have entrusted their PII and PHI to Defendant in the absence of its implied promise to monitor its computer systems and networks to ensure that it adopted

reasonable data security measures. The safeguarding of Plaintiff and Class Member's PII and PHI was critical to realize the intent of the parties.

125.   Plaintiff and Class Members fully performed their obligations under the implied contracts with Defendant.

126.   Defendant breached its implied contracts with Plaintiff and Class Members by failing to safeguard and protect their PII and PHI.

127.   As a direct and proximate result of Defendant's breaches of the implied contracts, Plaintiff and Class Members sustained damages.

128.   Plaintiff and Class Members are entitled to compensatory, consequential, and nominal damages suffered as a result of the Data Breach, including the loss of the benefit of the bargain.

129.   Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to, e.g., (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) immediately provide adequate long term credit monitoring to all Plaintiff and Class Members for a period longer than the inadequate one-year currently offered.

## COUNT III

### UNJUST ENRICHMENT/ QUASI CONTRACT

### (ON BEHALF OF PLAINTIFF AND THE NATIONWIDE CLASS)

130.   Plaintiff re-alleges and incorporates by reference the paragraphs above as if fully set forth herein.

131.   Plaintiff and Class Members conferred a monetary benefit upon Defendant in the form of purchasing products from Defendant, and in connection thereto, by providing their PII and PHI to Defendant with the understanding that Defendant would pay for the administrative costs of reasonable data privacy and security practices and procedures. Specifically, they were required to provide

Defendant with their PII and PHI. In exchange, Plaintiff and Class Members should have received adequate protection and data security for such PII and PHI held by Defendant.

132.    Defendant knew Plaintiff and Class Members conferred a benefit, which Defendant accepted. Defendant profited from these transactions and used the PII and PHI of Plaintiff and Class Members for business purposes.

133.    Acceptance of the benefit under these facts and circumstances make it inequitable for Defendant to retain that benefit without payment of the value thereof. Defendant enriched itself by saving the costs it reasonably should have expended on data security measures to secure Plaintiff and Class member's PII and PHI.

134.    Instead of providing a reasonable level of security that would have prevented the Data Breach, Defendant calculated to increase its own profits at the expense of Plaintiff and Class Members by utilizing cheaper, ineffective security measures. Plaintiff and Class Members thus suffered as a direct and proximate result of Defendant's decision to prioritize profits over the requisite data security.

135.    Under the principles of equity and good conscience, Defendant should not be permitted to retain money belonging to Plaintiff and Class Members, because Defendant failed to implement appropriate data management and security measures mandated by industry standards.

136.    Defendant acquired the PII through inequitable means in that it failed to disclose the inadequate security practices previously alleged.

137.    If Plaintiff and Class Members knew that Defendant had not secured their PII, they would not have agreed to provide their PII to Defendant.

138.    Plaintiff and Class Members have no adequate remedy at law.

1    139.   As a direct and proximate result of Defendant's conduct, Plaintiff

2    and Class Members have suffered and will continue to suffer other forms of

3    injury and/or harm.

4    140.   For the benefit of Plaintiff and Class Members, Defendant should be

5    compelled to disgorge proceeds that they unjustly received from them into a

6    common fund or constructive trust.

7                                    **COUNT IV**

8                            **INVASION OF PRIVACY**

9        **(ON BEHALF OF PLAINTIFF AND THE NATIONWIDE CLASS)**

10   141.   Plaintiff re-alleges and incorporates by reference the above

11   paragraphs as if fully set forth herein.

12   142.   Plaintiff and Class Members had a legitimate expectation of privacy

13   to their PII and PHI and were entitled to the protection of this information against

14   disclosure to unauthorized third parties.

15   143.   Defendant owed a duty to its current, former, and prospective

16   employees, including Plaintiff and Class Members, to keep their PII and PHI

17   confidential.

18   144.   Defendant failed to protect and released to unknown and

19   unauthorized third parties the PII and PHI of Plaintiff and Class Members.

20   145.   The PII and PHI that was publicized during the Data Breach was

21   highly sensitive, private, and confidential, as it included various PII and PHI.

22   146.   Defendant acted with reckless disregard for the privacy of Plaintiff

23   and Class Members rising to the level of (1) an intentional intrusion by

24   Defendant, (2) into a matter that Plaintiff and Class Members have a right to keep

25   private (i.e., their PII and PHI), and (3) which is highly offensive to a reasonable

26   person.

27   147.   Defendant acted knowingly when it permitted the Data Breach to

28

CLASS ACTION COMPLAINT          32

occur; it had actual knowledge that its information security practices were inadequate and insufficient. Defendant knew that PII and PHI was stored for years after Defendant no longer had a legitimate use for such data. Defendant also knew that the PII and PHI it stored was not securely encrypted, and that its systems were vulnerable to foreseeable threats as a result of inadequate security measures and training.

148.   Defendant was aware of the potential of a data breach and failed to adequately safeguard its systems and implement appropriate policies to prevent the unauthorized release of Plaintiff's and Class Members' data and PII and PHI.

149.   Defendant acted with such reckless disregard as to the safety of Plaintiff's and Class Members' PII and PHI to rise to the level of intentionally allowing the intrusion upon Plaintiff's and Class Members' seclusion.

150.   The unauthorized release to, custody of, and examination by unauthorized third parties of the PII and PHI of Plaintiff and Class Members is highly offensive to a reasonable person.

151.   Plaintiff and Class Members have been damaged by the invasion of their privacy in an amount to be determined at trial.

<u>**COUNT V**</u>

**BREACH OF FIDUCIARY DUTY**

**(ON BEHALF OF PLAINTIFF AND THE NATIONWIDE CLASS)**

152.   Plaintiff re-alleges and incorporates by reference the above paragraphs as if fully set forth herein.

153.   In light of the special relationship between Postmeds and its patients, whereby Postmeds became a guardian of Plaintiff's and Class Members' highly sensitive PII and PHI, Postmeds was a fiduciary, created by its undertaking and guardianship of the PII and PHI, to act primarily for the benefit of its patients, including Plaintiff and Class Members. This benefit included (1) the safeguarding

of Plaintiff's and Class Members' PII and PHI; (2) timely notifying Plaintiff and Class Members of the Data Breach; and (3) maintaining complete and accurate records of what and where Postmeds' patients' PII and PHI was and is stored.

154.    Postmeds had a fiduciary duty to act for the benefit of Plaintiff and the Class upon matters within the scope of its patients' relationship, in particular to keep the PII and PHI secure.

155.    Postmeds breached its fiduciary duties to Plaintiff and the Class by failing to protect their PII and PHI.

156.    Postmeds breached its fiduciary duties to Plaintiff and Class Members by failing to ensure the confidentiality and integrity of electronic PII and PHI Postmeds created, received, maintained, and transmitted, in violation of 45 CFR 164.306(a)(1).

157.    Postmeds breached its fiduciary duties to Plaintiff and Class Members by failing to implement technical policies and procedures for electronic information systems that maintain electronic PII and PHI to allow access only to those persons or software programs that have been granted access rights, in violation of 45 CFR 164.312(a)(1).

158.    Postmeds breached its fiduciary duties to Plaintiff and Class Members by failing to implement policies and procedures to prevent, detect, contain, and correct security violations, in violation of 45 CFR 164.308(a)(1).

159.    Postmeds breached its fiduciary duties to Plaintiff and Class Members by failing to identify and respond to suspected or known security incidents; mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity, in violation of 45 CFR 164.308(a)(6)(ii).

160.    Postmeds breached its fiduciary duties to Plaintiff and Class Members by failing to protect against any reasonably-anticipated threats or

1  hazards to the security or integrity of electronic PII and PHI, in violation of 45
2  CFR 164.306(a)(2).

3      161.  Postmeds breached its fiduciary duties to Plaintiff and Class
4  Members by failing to protect against any reasonably-anticipated uses or
5  disclosures of electronic PII and PHI that are not permitted under the privacy
6  rules regarding individually identifiable health information, in violation of 45
7  CFR 164.306(a)(3).

8      162.  Postmeds breached its fiduciary duties to Plaintiff and Class
9  Members by failing to ensure compliance with the HIPAA security standard rules
10 by its workforce, in violation of 45 CFR 164.306(a)(94).

11     163.  Postmeds breached its fiduciary duties to Plaintiff and Class Members
12 by impermissibly and improperly using and disclosing PII and PHI that is and
13 remains accessible to unauthorized persons, in violation of 45 CFR 164.502, et seq.

14     164.  As a direct and proximate result of Postmeds' breaches of its fiduciary
15 duties, Plaintiff and Class Members have suffered and will continue to suffer the
16 harms and injuries alleged herein, as well as anxiety, emotional distress, loss of
17 privacy, and other economic and noneconomic losses.

18                          **COUNT VI**
19                   **DECLARATORY JUDGMENT**
20     **(ON BEHALF OF PLAINTIFF AND THE NATIONWIDE CLASS)**

21     165.  Plaintiff re-alleges and incorporates by reference the paragraphs above
22 as if fully set forth herein.

23     166.  Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, et seq., this
24 Court is authorized to enter a judgment declaring the rights and legal relations of
25 the parties and grant further necessary relief. Furthermore, the Court has broad
26 authority to restrain acts, such as here, that are tortious and violate the terms of the
27 federal and state statutes described in this Complaint.

28

167.   An actual controversy has arisen in the wake of Defendant's data breach regarding its present and prospective common law and other duties to reasonably safeguard its customers' PII and PHI and whether Defendant is currently maintaining data security measures adequate to protect Plaintiffs from further data breaches that compromise their PII.

168.   Plaintiff alleges that Defendant's data security measures remain inadequate. Plaintiff will continue to suffer injury as a result of the compromise of their PII and PHI and remain at imminent risk that further compromises of their PII and PHI will occur in the future.

169.   Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

   a. Postmeds continues to owe a legal duty to secure its users' PII and to timely notify consumers of a data breach under the common law, Section 5 of the FTC Act, and various state statutes;

   b. Postmeds continues to breach this legal duty by failing to employ reasonable measures to secure Plaintiff and Class Members' PII and PHI.

170.   The Court also should issue corresponding prospective injunctive relief requiring that Postmeds employ adequate security protocols consistent with law and industry standards to protect consumers' PII and PHI.

171.   If an injunction is not issued, Plaintiff will suffer irreparable injury, and lack an adequate legal remedy, in the event of another data breach at Defendant. The risk of another such breach is real, immediate, and substantial. If another breach at Postmeds occurs, Plaintiff will not have an adequate remedy at law because many of the resulting injuries are not readily quantified and they will be forced to bring multiple lawsuits to rectify the same conduct.

172.    The hardship to Plaintiff if an injunction does not issue exceeds the hardship to Postmeds if an injunction is issued. Among other things, if another massive data breach occurs at Postmeds, Plaintiff will likely be subjected to fraud, identify theft, and other harms described herein. On the other hand, the cost to Postmeds of complying with an injunction by employing reasonable prospective data security measures is relatively minimal, and Postmeds has a pre-existing legal obligation to employ such measures.

173.    Issuance of the requested injunction will not do a disservice to the public interest. To the contrary, such an injunction would benefit the public by preventing another data breach at Postmeds, thus eliminating the additional injuries that would result to Plaintiffs and the millions of individuals whose PII and PHI would be further compromised.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the other members of the Class alleged herein, respectfully request that the Court enter judgment in her favor and against Defendant as follows:

A.    For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as the representatives for the Class and Plaintiff's attorneys as Class Counsel;

B.    For an order declaring the Defendant's conduct violates the causes of action referenced herein;

C.    For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

D.    Ordering Defendant to pay for lifetime credit monitoring services for Plaintiff and the Class

E.   For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

F.   For prejudgment interest on all amounts awarded;

G.   For an order of restitution and all other forms of equitable monetary relief;

H.   For injunctive relief as pleaded or as the Court may deem proper; and

I.   For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit, and any other expense, including expert witness fees;

J.   Such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, individually and on behalf of all those similarly situated, hereby requests a jury trial, pursuant to Federal Rule of Civil Procedure 38, on any and all claims so triable.

Dated: December 4, 2023

By: */s/Eric M. Poulin*

**POULIN | WILLEY | ANASTOPOULO, LLC**
Eric M. Poulin (California State Bar No. 298476)
      *eric.poulin@poulinwilley.com*
Blake G. Abbott (*Pro Hac Vice* Forthcoming)
      *blake.abbott@poulinwilley.com*
Paul J. Doolittle (*Pro Hac Vice* Forthcoming)
      *paul.doolittle@poulinwilley.com*
32 Ann Street
Charleston, SC 29403

Telephone: (803) 222-2222
Fax: (843) 494-5536

-AND-

John Christian Bohren (SBN: 295292)
*yanni@bohrenlaw.com*
BOHREN LAW, APC
145 S Spring Street #850
Los Angeles CA 90012
Tel: 619-433-2803
Fax: 800-867-6779


*Attorneys for Plaintiff Callie Adams*